UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THEODORE A. WOZNEAK,            CIVIL DIVISION

        Plaintiff,            Case No. <u>3:13-cv-230</u>

        v.

PENNSYLVANIA STATE UNIVERSITY,

        Defendant.

**COMPLAINT AND JURY DEMAND**

A.     ***Preliminary Statement***

1.     The plaintiff Theodore A. Wozneak brings this action against the defendant Pennsylvania State University, alleging that it violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, by failing to provide the plaintiff with reasonable accommodations which would have enabled him to complete successfully the educational program in which he was enrolled.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction over the state common law claims raised herein.  A jury trial is demanded.

B.     ***Jurisdiction and Venue***

2.     This action arises under Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and the common law of Pennsylvania.

3.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a) and the doctrine of pendant jurisdiction.

4.      Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(c) as the defendant conducts business in this district.

C.      *The parties*

5.      The plaintiff Theodore A. Wozneak is an adult individual who resides at 509 Beech Street, Warren, Pennsylvania 16365.

6.      The defendant Pennsylvania State University ("PSU") is a state-related institution of higher education, chartered under the laws of the Commonwealth of Pennsylvania, for the education of individuals in the various branches of science, learning and practical agriculture. The defendant has its main campus in State College, Pennsylvania and its DuBois campus at 1 College Place, DuBois, Pennsylvania 15801.   The defendant is also a place of public accommodation and a recipient of federal financial assistance.

D.      *Factual Background*

7.      The plaintiff is an individual who has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and Pervasive Developmental Disorder ("PDD").

8.      The plaintiff's medical conditions constitute disabilities, as defined by the ADA, in that they are mental and/or physical impairments that substantially limit one or more of the major life activities of the plaintiff, including the ability to concentrate, learn, store and retain information.

9.      The plaintiff successfully completed an undergraduate degree at Pennsylvania College of Technology, also officially known as Penn College, in Williamsport, Pennsylvania, having received an Associate Degree in Business Management in 1994.   His final grade point average was 2.027.

10.     The plaintiff attended the University of Pittsburgh at Titusville from 2007 through 2009 and was enrolled in the Physical Therapist Assistant Program.  The plaintiff did not complete the program and did not receive a degree.

11.     The plaintiff applied to the DuBois campus of PSU in May 2009 for the academic school year beginning that fall.  The plaintiff advised PSU regarding his disabilities at the time he applied.  The plaintiff supplied PSU with documentation to support his diagnosis, including a report from his treating physician.

12.     Because of his grades, the plaintiff was admitted to PSU on a probationary period, and was scheduled to begin in the Fall semester.  The plaintiff had to achieve at least a 2.0 grade point average before he would be admitted to the Physical Therapy Assistant program.

13.     The plaintiff started the non-degree probationary year of classes in September 2009.

14.     Throughout his time at PSU, the plaintiff worked with the Office of Vocational Rehabilitation ("OVR") and the Penn State DuBois Office of Disability Services ("ODS") regarding his disabilities and academic career.

15.     The plaintiff requested and was provided some reasonable accommodations to facilitate successfully completing his course work, including being allowed to take in-class tests away from other students and being offered additional time to take in-class tests.

16.     The plaintiff successfully completed his probationary year of courses by achieving a 2.95 grade point average in the Fall semester and a 2.63 grade point average in the following Spring semester.

17.     The plaintiff was admitted into the Physical Therapist Assistant program as of July 2010 to commence in the Fall Semester of 2010.

18.     The plaintiff successfully completed the two-year in-class course work without accommodations, or from time to time, with minimal accommodations, such as sitting in a location away from other students for in-class tests.

19.     The plaintiff's cumulative grade point average over these two years was 3.27.  He received commendation for making the Dean's List during the Spring 2011 semester.  In addition, in recognition of his academic success, the plaintiff was nominated to be Vice President of the Physical Therapy Assistant Club.

20.     A requirement of the Physical Therapist Assistant program was the successful completion of three clinical rotations, which took place after the course work was completed. The clinical rotations involved hands-on experience at a facility; the student shadows a physical therapist and/or physical therapist assistant and performs work under their supervision.  The student is required to do at least one clinical in an outpatient setting and one clinical in an in-patient/acute care setting.

21.     The plaintiff's first clinical rotation was at Warren General Hospital, located in Warren, Pennsylvania.  This facility provides outpatient care.  This rotation took place from November 29, 2010 through December 17, 2010 and involved various physical therapy modalities, therapeutic exercise, gait and transfer training, documentation skills, balance and coordination activities and vital sign measurements.  The plaintiff advised the facility's physical therapists, physical therapist assistants and staff about his disabilities and he was able to perform all of the tasks assigned to him either without any accommodations or with minimal accommodations.  In this clinical rotation, the facility accommodated the plaintiff's disabilities by giving the plaintiff extra time to complete documentation and charting tasks, by spending

more one-on-one time with the plaintiff for instruction and explanation and by providing the plaintiff with extra time to spend with patients.  The plaintiff passed the rotation, receiving an A.

22.     The plaintiff's second clinical rotation was at Rehabilitation Today, located in Bradford, Pennsylvania.  This facility provides outpatient care.  This rotation took place from May 9, 2011 through June 16, 2011, and involved various physical therapy modalities, therapeutic exercise, gait and transfer training, documentation skills, balance and coordination activities and vital sign measurements.  The plaintiff advised the facility's physical therapists, physical therapist assistants and staff about his disabilities and he was able to perform all of the tasks assigned to him either without any accommodations or with minimal accommodations.  In this clinical rotation, the facility accommodated the plaintiff's disabilities by giving the plaintiff extra time to complete documentation and charting tasks, by spending more one-on-one time with the plaintiff for instruction and explanation and by providing the plaintiff with extra time to spend with patients. The plaintiff passed the rotation, receiving an A.

23.     The plaintiff was assigned to St. Vincent Health Center in Erie, Pennsylvania for his third clinical.  This facility provides in-patient/acute care.  This clinical rotation took place from June 20, 2011 through July 29, 2011.  Again, at the outset of the rotation, the plaintiff advised the facility's physical therapists, physical therapist assistants and the staff about his disabilities.  However, the facility and staff did nothing to accommodate his disabilities and did not provide him with any orientation or computer training, both of which were necessary for the plaintiff to complete the rotation successfully.  During the clinical rotation at St. Vincent Health Center, the plaintiff worked with multiple therapists who gave the plaintiff conflicting directions and methods of treating patients, which confused the plaintiff.  Further, he was exposed to clinical experiences, including medicines, equipment and charting, which were not covered in

the plaintiff's classes and were not explained to the plaintiff in an orientation or during the clinical rotation.  The plaintiff was not given any extra time with his instructors or with patients.

24.     During the rotation, the plaintiff realized that he was not able to learn in this environment and approached the manager of the physical therapy department for help.  He requested that he be reassigned to another clinician who would be willing to spend some extra time with him and to provide more focused one-on-one training, which would accommodate his disabilities.  Unfortunately, the manager refused to intervene and told the plaintiff to talk to the clinician himself about his issues.  The plaintiff did so, but the clinician refused to transfer him to somebody else and did not otherwise modify the course of instruction to accommodate the plaintiff's disabilities.

25.     The plaintiff did not receive a passing grade in this third clinical rotation.

26.     PSU had a policy to provide students who did not pass a clinical rotation with an opportunity to try again.  In these circumstances, the student is given a choice of facilities to retake the clinical rotation.

27.     The plaintiff was allowed to try another clinical rotation, but was not given a choice regarding facilities.  Specifically, the plaintiff was not given an opportunity to choose to do the rotation in a nursing home facility, which would have satisfied the requirement of working in an in-patient/acute care setting. Instead, the plaintiff was unilaterally assigned by PSU to St Mary's Hospital in St Mary's, Pennsylvania, which is another fast-paced in-patient/acute care facility.  The rotation was to run from September 19, 2011 through October 28, 2011.

28.     The plaintiff raised concerns with taking a rotation in a hospital because the pace and unstructured format were not suitable for his disabilities.  However, his concerns were not addressed and, instead, were dismissed.  The plaintiff was not given the option to do his clinical

rotation at a nursing home, for example.  A nursing home is still an acute care setting, but it has a much more suitable pace, which would have accommodated his disabilities.

29.     At the outset of the rotation at St. Mary's Hospital, the plaintiff advised the facility and staff members regarding his disabilities and needs regarding an accommodation. However, no reasonable accommodation was offered or given.  The plaintiff again found himself in a situation where he was reporting to multiple therapists who gave conflicting directions and methods of treating patients.  He was again exposed to and expected to master procedures at the facility, which were never covered in his classes and were not explained to him ahead of time in a focused and organized fashion.  The plaintiff had difficulty coping with the barrage of information that he was expected to master without the structure that he needed.  On or about October 6, 2011, after only two and one-half weeks into the six-week rotation, the plaintiff was told that he was not going to pass the rotation and was asked to leave.  Accordingly, the plaintiff did not complete the rotation and did not receive a passing grade.

30.     Because the plaintiff did not complete this third and final clinical rotation, he was not eligible for the degree that he had worked so hard to achieve and could not sit for his boards.

31.     Shortly after being dismissed from the St Mary's Hospital rotation, and on repeated occasions thereafter, the plaintiff met with Barbara Reinard, the program coordinator for the physical therapist assistant program, to discuss his situation.  Reinard was aware of the plaintiff's disabilities and had the authority to provide a waiver so as to allow the plaintiff to re-take the third clinical.  The plaintiff specifically requested that he be permitted to take the clinical rotation at a nursing home facility and explained that this setting would provide a more conducive environment to accommodate his disabilities but still provide the needed clinical

experience.  Reinard said that she would "investigate the matter"; however, she ultimately refused to provide the plaintiff with the requested waiver.

32.     The plaintiff identified and found a suitable facility, Lutheran Home at Kane ("LHK"), to do his third clinical.  LHK is an in-patient nursing home and its rehabilitation director was willing to have the plaintiff do his rotation there and a physical therapist assistant stated her willingness to take the plaintiff as a student.  LHK was well suited to satisfy the plaintiff's requirement of doing a clinical rotation in an in-patient/acute care facility because it was associated with PSU's physical therapist assistant program and students in the program had done clinical rotations there in the past.  The plaintiff advised Reinard and other officials at PSU, including the clinical coordinator and academic deans about this option.

33.     After his requests for the accommodation described above were ignored by the decision makers within PSU's physical therapist assistant program, the plaintiff formally petitioned PSU, through its established procedures, requesting that his disabilities be accommodated and that he be given the opportunity to retake the third clinical rotation at a facility and in a context that better suited his disabilities.  Specifically, the plaintiff requested that he be permitted to take a clinical rotation at a nursing home facility, which would provide a more conducive environment to accommodate his disabilities but still provide the needed clinical experience.

34.     In connection with his request for accommodation from PSU, the OVR referred the plaintiff to a licensed psychologist, Dennis P. Clark, who conducted an independent psychological evaluation.  Clark diagnosed the plaintiff with a learning disorder and made the following recommendations:  "I highly recommend that placement in an acute-care setting is too overwhelming and does not afford [the plaintiff] of adequate structure and good clinical

supervision.  Rather, consider a placement in a nursing facility or a smaller physical therapy clinic where there is more structure and where a clinical supervisor can spend a reasonable period of time with him."  Clark's report was provided to PSU.

35.     While he was awaiting news from PSU regarding his request for an accommodation, the plaintiff volunteered at Senekean Manor Nursing Home job-shadowing the therapists and receiving instruction.  He spent approximately 100 hours doing this volunteer work.  In addition, he continued reviewing and studying his course work to keep himself ready for another clinical rotation and to be prepared to sit for his board exam.

36.     On or about May 10, 2012, formally and finally PSU denied the plaintiff's request to re-take his third clinical rotation.

37.     As detailed above, PSU discriminated against the plaintiff on the basis of his disabilities in the following ways:

> (a)     Selecting a clinical setting that was not conducive to the plaintiff's learning disabilities and by not providing reasonable accommodations while he was performing the clinical rotations at St Vincent's Hospital and St Mary's Hospital, as detailed above;

> (b)     By not permitting him the opportunity to select the facility to do his third clinical rotation after he did not successfully pass at St. Vincent Health Center and by unilaterally assigning him a rotation at St. Mary's Hospital;

> (c)     Denying his reasonable request for an accommodation to re-take his third clinical rotation at a nursing home facility, which would have allowed him to perform and satisfy the essential requirements of the clinical rotation in an environment that was better suited to his disabilities, first, by denying

his request for a waiver, which could have been granted by Reinard, and second, by denying his petition to drop and add the third clinical rotation, which was presented to PSU in accordance with its procedures.

## FIRST CAUSE OF ACTION

38.     The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

39.     The plaintiff's medical conditions constitute disabilities, as defined by the ADA, in that they are mental and/or physical impairments that substantially limit one or more of the major life activities of the plaintiff, including the ability to concentrate, learn, store and retain information.

40.     The defendant is a state-related institution and therefore is subject to Title II of the ADA.

41.     The defendant discriminated against the plaintiff on the basis of his disabilities, in violation of Title II of the ADA

## SECOND CAUSE OF ACTION

42.     The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

43.     The plaintiff's medical conditions constitute disabilities, as defined under Section 504 of the Rehabilitation Act, as amended 29 U.S.C. § 794(20)(B), in that they are mental and/or physical impairments that substantially limit one or more of the major life activities of the plaintiff, including the ability to concentrate, learn, store and retain information.

44.     During all relevant times, the defendant is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794(b)(A)(1) by virtue of its participateion in federal programs including, but not limited to, the federal student loan program.

45.     The defendant discriminated against the plaintiff on the basis of his disabilities, in violation of the Rehabilitation Act.

### THIRD CAUSE OF ACTION

46.     The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

47.     The plaintiff entered into a contract with PSU whereby the plaintiff agreed to pay tuition in connection with his admittance to the Physical Therapist Assistant program at PSU's DuBois campus.  In exchange, PSU agreed to permit the plaintiff to take classes and perform the clinical rotations necessary to achieve said degree.

48.     Further, PSU expressly and/or impliedly agreed to provide the plaintiff with reasonable accommodations as necessary to facilitate successful completion of the degree.

49.     PSU breached the contract by failing to provide reasonable accommodations.

50.     The plaintiff made repeated demands that PSU cure its breach of contract.

51.     PSU refused and/or failed to cure its breach.

52.     The plaintiff suffered damages as a result of PSU's breach of contract.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADA and under the Rehabilitation Act and for breach of contract, including compensatory damages, refunds of tuition and costs incurred in connection with his attendance at

PSU, other economic damages, punitive damages, attorney's fees and costs and any other relief the court deems appropriate.

Respectfully submitted,


*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. ID No. 63306
JOHNSON, BRUZZESE & TEMPLE
1720 Gulf Tower
707 Grant Street
Pittsburgh, PA 15219
412.338.4790

Counsel for the plaintiff


Dated:  October 3, 2013